## The West Branch Canal Company *versus* The Elmira and Williamsport Railroad Company.

By an Act of Assembly, a railroad company was to receive from the state treasurer certain canal tolls, which were to cease when "the net proceeds of the road, after paying necessary expenses of motive power and superintendence, exceeded 6 per cent. per annum." The net receipts, after paying expenses, were less than 6 per cent. on capital stock and funded debt, but exceeded 6 per cent. on the capital stock. *Held*, that the grant had ceased.

March 29th 1867.    Before THOMPSON, STRONG and AGNEW, JJ.   READ, J.; at Nisi Prius.   WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Lycoming county*.

This was an action of assumpsit by The Elmira and Williamsport Railroad Company against The West Branch and Susquehanna Company, issued to recover certain tolls claimed by the plaintiff to be due to them from the defendant by virtue of a resolution of the legislature of Pennsylvania of April 14th 1843 : Pamph. L. 380.

The resolution provided that all the tolls for transportation of passengers and tonnage descending, brought on the West Branch Canal and Susquehanna Division at Williamsport, by way of the Elmira and Williamsport Railroad, should be paid to the railroad company by the state treasurer, at the end of each financial year, to aid in constructing the road; the act not to take effect until one track should be completed to Elmira, and not to continue for more than fifteen years, with a proviso that "if at any time during the above period the net proceeds of said road, after defraying the necessary expenses for motive power and superintendence, shall exceed 6 per centum per annum upon the capital stock thereof, then, and in such case, the rights and privileges hereby granted shall cease and determine. That annually after the provisions of this act shall have gone into operation, the officers of said company shall make out, under oath or affirmation, and transmit to the auditor-general, a detailed statement of the receipts and expenditures on said road, designating the amount of tonnage and number of passengers brought on the canal at Williamsport by means of said railroad," &c.

In 1858 the Commonwealth sold the West Branch and Susquehanna Division of the public works to the Sunbury and Erie Railroad Company, "subject to all contracts and arrangements theretofore made by Act of Assembly or otherwise, for and in respect to the use of said works, and the same to be carried out with all persons interested therein in the same manner as the Commonwealth or its agents were required to do by law."   The West Branch and Susquehanna Company, the defendant, bought these canals the same year.

[West Branch Canal Co. *v.* Elmira and Williamsport Railroad Co.]

The Elmira and Williamsport Railroad Company, the plaintiff, was incorporated March 12th 1860, and authorized to purchase the Williamsport and Elmira Railroad if the Supreme Court should decree a sale of the same. Such a decree was made, and the plaintiff purchased the road on the 11th of May 1860.

The tolls claimed in this suit were for the year 1862, and amounted to $884.24.

A return made by the defendant to the auditor-general for 1862 showed that the receipts from the railroad for that year were $347,822.64; that the payments other than for construction were $294,663.61, of which $80,341.57 were for interest. The return showed also that the capital stock was $1,000,000, that the funded debt was $1,000,000, and that the floating debt was $42,155.43.

The defendant submitted several points to the court; the only one noticed by the Supreme Court was the 4th, which was: "The return made by the plaintiff to the auditor-general for the year 1862 shows that the capital stock of said company is $1,000,000; that the receipts for the same period were $347,822.64; that all payments for motive power and superintendence for the same period were $214,322.04, leaving net proceeds amounting to $133,500.60, a sum sufficient to pay 6 per centum upon over $2,200,000; that if 'the net proceeds of said road, after defraying all the necessary expenses for motive power and superintendence, exceed 6 per cent. per annum upon the capital stock,' the rights and privileges granted by the Act of April 14th 1843, cease and determine by its own terms." This point was negatived; and the court (Jordan, P. J.) directed a verdict for the plaintiff for $1030.39, and directed also a motion to be entered for the defendant for a new trial, and if the court should be of the opinion that plaintiff is not entitled to recover, judgment to be entered in defendant's favor, *non obstante verdicto.* The motion for a new trial was afterwards discharged, and judgment entered on the verdict November 11th 1860.

The charge of the court and so entering judgment were assigned for error.

*J. Gamble,* for plaintiff in error, cited Fletcher *v.* Peck, 6 Cranch 136; Lauman *v.* Lebanon Valley Railroad, 6 Casey 46.

*J. Armstrong,* and *W. H. Armstrong,* for defendant in error.

The opinion of the court was delivered, May 13th 1867, by

THOMPSON, J.—We will notice in this discussion only the answer of the court to the defendant's 4th point. The action was instituted to recover from the defendant below certain tolls

[West Branch Canal Co. *v.* Elmira and Williamsport Railroad Co.]

alleged to be due the plaintiff from the defendant, for the year 1862, under the resolution of the 14th April 1843 : Pamph. L. 386. This resolution was passed while the state was the owner of the West Branch Canal, as well as all the other public improvements built by her.

The resolution was intended to aid the construction of the Elmira and Williamsport Railroad, and the state undertook, under the regulations mentioned in the resolution, to pay over to that company, at the end of each financial year, all tolls received upon the canal, derived from passengers and freight brought to it by the railroad company. The act was not to take effect until one track of the road should be finished to Elmira, and not to continue for a longer period than fifteen years. Then comes a *proviso* which materially affects the case. It is as follows:—

" *And provided further*, That if at any time during the above period the net proceeds of said road, after defraying the necessary expenses for motive power and superintendence, shall exceed 6 per cent. per annum upon the capital stock thereof, then, and in such case, the rights and privileges hereby granted shall cease and determine."

We have no doubt that the plaintiff below was the legal successor to the Elmira and Williamsport Railroad Company, and fully invested with all its rights and privileges, and that the defendant was bound, as was decided in 9 Casey 288, to pay the railroad company, being the successor to the state, the tolls in question, if they have not ceased by the express limitation in the resolution. We think they did so cease in 1862. By the report of the railroad company in the auditor-general's office, the stock is represented to be $1,000,000, and the earnings of the company to have been in 1862 $347,822.64, and that the disbursements for that year, for other purposes than construction and interest, were $214,322.04, leaving a balance of $133,500.60, which was far above 6 per cent. on the reported stock of the company. To the present question it is no matter what may have been done with this money by the company, whether it has been applied to the cost of construction or not. The only inquiry now is, did the net earnings of the road in 1862, " after defraying the necessary expenses for motive power and superintendence," exceed 6 per cent. upon the capital stock of the company?

It is demonstrated by the company's official report that it did, and thus the period having arrived at which the grant was to cease, we think the court erred in directing a verdict for the plaintiff, and in entering judgment thereon afterwards. It was purely a grant or gratuity, and we have no right or power to enlarge the terms of it, and call everything capital stock, such as the cost of construction, right of way, building shops, &c., &c.

[West Branch Canal Co. *v.* Elmira and Williamsport Railroad Co.]

It was not interest on the capital that was to be the limit at which the gratuity should cease. It was to cease when the net earnings should exceed 6 per cent. on the capital stock. No one can mistake what capital stock means. The company have defined it in their report, and set it down as it exists, at $1,000,000. The net earnings thus reported would exceed twice that sum.

Regarding the action of the court as a mode of viewing the law of the case, we must reverse the judgment; and although we might enter judgment on the reserved point, we will concede the prayer of the defendant in error, reverse the judgment below and award a *venire facias de novo.*